[No. 12193.  Department Two.  September 9, 1914.]

A. U. MILLS, *Appellant*, v. W. D. NICKEUS, *as City Clerk of the City of Tacoma, Respondent.*[1]

MUNICIPAL CORPORATIONS—OFFICERS—RECALL—PETITIONS—NUMBER OF SIGNERS—STATUTES—CONSTRUCTION. Const., art. 1, §§ 33, 34, prescribing the rule for determining the number of signatures to recall petitions, and providing that the number required for recall of officers of cities of the first class shall be twenty-five per cent of the votes cast "for his said office to which he was elected at the preceding election," must be construed as meaning the number of votes cast at the next preceding election held for the election of such officer (a councilman), whether the election be the one at which the councilman sought to be recalled was elected or a subsequent election; the words "his office to which he was elected," being considered as a general designation of the office held by him and his associates, the evident purpose of the provision being to determine the question of recall by the required percentage of present qualified voters.

SAME—NUMBER OF SIGNERS—TIME OF FILING PETITION. Under Const., art. 1, § 33, 34, providing that petitions for the recall of officers of cities of the first class shall contain signatures to the number of twenty-five per cent of the votes cast for all candidates for the office at the next preceding election, the percentage of signatures will be computed upon the vote cast at the election next previous to the time of filing petitions with the city clerk, although formal charges against the officer may have been filed prior to such election.

CERTIORARI—WHEN LIES—ADEQUACY OF REMEDY BY APPEAL. Where a cause has been brought before the supreme court both by writ of certiorari and appeal, counsel, by stipulation, having submitted the cause for final determination, a disposition of the cause on the appeal is the furnishing of a plain, speedy and adequate remedy, and the certiorari proceedings will be dismissed.

Appeal from, and certiorari to review, a judgment of the superior court for Pierce county, Card, J., entered July 31, 1914, dismissing an action for an injunction, after a trial on the merits to the court.  Reversed.

[1]Reported in 142 Pac. 1145.

*Sullivan & Christian, Bates, Peer & Peterson,* and *Gilbert E. Peterson,* for appellant.

*T. L. Stiles* and *Frank M. Carnahan,* for respondent.

*H. P. Burdick* and *G. J. Langford,* for intervener.

PARKER, J.—This is an action to enjoin the defendant, W. D. Nickeus, as city clerk of the city of Tacoma, from calling a special election of the voters of the city, to vote upon the question of the recall and discharge of the plaintiff, A. U. Mills, from his office of councilman of the city. A trial in the superior court for Pierce county resulted in judgment denying the relief prayed for by the plaintiff, dissolving the temporary injunction issued against the defendant, and dismissing the action. From this disposition of the cause, the plaintiff has appealed.

The council of the city of Tacoma consists of the mayor and four councilmen, each of whom is elected at large by the voters of the city. The term of office of each councilman is four years. Two councilmen are elected at each general municipal election held in April in the even numbered years. Appellant, A. U. Mills, was duly elected councilman at the general municipal election held in April, 1912. The total number of votes cast at that election for the office of councilman was 18,107. The total number of votes cast at the general municipal election held in April, 1914, for the office of councilman, was 21,231. In June, 1914, there was filed with respondent Nickeus, as city clerk and registration officer of the city, petitions signed by voters of the city, demanding the calling of a special election to determine the question of recall and discharge of appellant from office, preceded by the filing of charges against him which we shall assume were sufficient in form. These petitions were found and determined by respondent Nickeus, as registration officer of the city, to contain a total of 4,617 valid signatures of qualified voters of the city. The superior court found and determined, upon the trial of this case, that these petitions

contained only 4,567 valid signatures of qualified voters of the city. It will be noticed, however, that the number of valid signatures to the petitions, as determined, both by the respondent as registration officer of the city, and by the trial court, furnishes a small margin in excess of twenty-five per cent of the number of votes cast for councilman at the general municipal election of April, 1912. The number of each determination, however, falls far short of twenty-five per cent of the number of votes cast for councilman at the general municipal election of April, 1914. These are conceded facts, and we think are controlling here.

The trial court rendered its decision upon the theory that the number of required valid signatures to the recall petitions is only twenty-five per cent of the number of votes cast for councilman at the general municipal election of April, 1912, at which appellant was elected councilman for the term he is now serving. This theory counsel for appellant contend is erroneous, insisting that the number of required valid signatures to the petitions is twenty-five per cent of the number of votes cast for councilman at the general municipal election of April, 1914, that election being the last preceding election for councilman held before the filing of the recall petitions with respondent as city clerk and registration officer.

The recall amendment of our constitution, being §§ 33 and 34 of article 1, prescribes the rule for determining the required number of signatures of voters to recall petitions, as follows:

"Every elective public officer in the state of Washington except judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall  .  .  .  signed by the percentages of the qualified electors thereof, hereinafter provided, the percentage required to be computed from the total number of votes cast for all candidates for his said office to

which he was elected at the preceding election, is filed . . .
The percentages required shall be . . . city officers of
cities of the first class, . . . twenty-five per cent."

Manifestly no question could arise under this constitu-
tional provision as to what election would furnish the proper
measure of the number of voters as a basis for computing
twenty-five per cent thereof, to determine the required num-
ber of signatures to a recall petition, where the officer sought
to be recalled holds his office apart from other officers and is
not one of a class of officers of equal rank sharing equally
the duties of those belonging to his class, like members of a
legislative body or a board whose official actions are deter-
mined by majorities and whose elections occur at different
times, by votes of the same constituency. Of course, the pre-
ceding election to fill such an office would be the one at which
the officer sought to be recalled was elected, since there would
be no general election during his term for the office which he
holds. The proper solution of the problem here presented,
however, is not so free from difficulty. The four council-
men are all of equal rank and authority, so far as their du-
ties as councilmen are concerned. They, as councilmen, act
collectively by majority vote, and not individually. We are
not here concerned with their other duties, since the office of
councilman only is the office to which they are elected and
subject to be recalled and discharged from. It is true that,
by designation of the council as a body, each councilman is
assigned to certain separate executive duties, in the perform-
ance of which he is designated commissioner; but this is not
the elective office from which a councilman may be recalled
and discharged.

What, then, is the meaning of the words found in the con-
stitution, "the percentage required to be computed from the
total number of votes cast for all candidates for his said
office to which he was elected at the preceding election," as
applied to recall petitions directed against one of a class of
officers of equal power and authority elected at different

times, as appellant and his associates were elected? Must recall petitions directed against him have signatures equalling in number twenty-five per cent of the votes cast at the election next preceding the filing of the recall petitions, even though that election occurred to elect councilmen after his election to that office; or must recall petitions have signatures equalling twenty-five per cent of the number of votes cast at the election at which he was elected?

Looking to the literal meaning of the language of the constitution, aside from all thought of its purpose and spirit, we must confess the matter is not free from difficulty, though, even so viewing it, we would be inclined to hold, in applying it to this situation, that the words, "at the preceding election," mean at the next preceding election held for the election of councilman, whether that election be the one at which the councilman sought to be recalled was elected or a subsequent election. "His office to which he was elected," we regard as being a general designation of the office, held not only by him but by his associates, and as being, in effect, parenthetical. We think these words were not intended to restrict the meaning of the words "at the preceding election," the commonly accepted meaning of which is, at the last preceding election. Looking to the evident purpose and spirit of this constitutional provision, we think it is manifest that it evidences an intent to measure the number of required signatures upon a recall petition by the required percentage of the number of votes cast at the nearest preceding election, and to have the question of whether there shall be a recall election or not decided by the required percentage of *present qualified voters*, as near as that can be ascertained. Plainly the record of the last preceding election furnishes a more nearly correct measure of the present number of qualified voters than does the record of any prior election. Clearly it is in keeping with the spirit of our government by the people that, when a question of public concern is to be de-

cided by a majority or certain percentage of the qualified voters of the state or any legal subdivision thereof, it is to be decided by such percentage of the *present qualified voters as nearly as that can be ascertained.*

Having these considerations in view, we are led to the conclusion that the intent and spirit of the constitution is to require signatures upon these petitions equalling twenty-five per cent of the number of votes cast at the last preceding election held for the election of councilmen, being the 1914 election. These petitions do not contain signatures equalling twenty-five per cent of the votes cast at the last preceding election held in the city of Tacoma for councilman, which is the office held by appellant who is sought to be recalled and discharged therefrom. We conclude that the judgment of the trial court must be reversed, and the cause remanded with instructions to render judgment as prayed for by appellant, enjoining respondent, as city clerk, from calling a special election.

Some contention seems to be made by counsel for respondent rested upon the fact that this recall movement had its inception in February prior to the holding of the election of April, 1914, and for that reason, that the percentage should be computed upon the total vote of the election of 1912. The record before us does not clearly show when the formal charges against appellant were filed with the city clerk. But assuming that they were filed prior to the election of April, 1914, we nevertheless are of the opinion that the number of signatures to the recall petitions must be controlled by the number of votes cast at the election of 1914, since the petitions were filed with the clerk as registration officer after that election.

The trial court permitted certain citizens to intervene, who claimed that a greater number of valid signatures were attached to the petitions for recall than were counted and so determined by respondent as registration officer of the city.

These claims are urged upon us here. But whatever merit there may be in interveners' contentions, as matters of law, it is plain that the counting of all the signatures which they claim should be counted would result in the total number of signatures falling far short of the number required, computed upon the basis of the 1914 election. Therefore these contentions do not call for discussion.

This cause has been brought here by writ of certiorari as well as by appeal, evidently upon the theory that counsel for appellant conceive that an appeal would not afford a plain, speedy, and adequate remedy, in the event it could not be promptly disposed of. However, upon the bringing of the record here upon both appeal and certiorari, counsel have, by stipulation, submitted the cause for final determination, and the cause having been determined upon the appeal, such determination has manifestly furnished a plain, speedy, and adequate remedy. We therefore conclude that the certiorari proceedings should be dismissed, and the cause reversed upon the appeal. It is so ordered.

CROW, C. J., FULLERTON, ELLIS, and MORRIS, JJ., concur.